```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

IN RE: TIM HAROLD ROSE and     :
       TOYIN GBEMISOLA ROSE
                               :
TIM HAROLD ROSE AND TOYIN
GBEMISOLA ROSE                 :

       Appellants              :

           v.                  :   Civil Action No. DKC 23-1231

US BANK N.A., et al.,          :

       Appellees               :
```

## MEMORANDUM OPINION

Pending before the court is an appeal filed by Appellants Tim Harold Rose ("Mr. Rose") and Toyin Gbemisola Rose ("Mrs. Rose") from two orders entered by United States Bankruptcy Judge Maria Ellena Chavez-Ruark: (1) an order dismissing Counts I and II of the Adversary Complaint and converting the motion to dismiss Count III to a motion for summary judgment,[1] and (2) an order granting summary judgment to Appellees PNC Bank, N.A., and U.S. Bank, N.A., as Trustee for Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-

---

[1] Appellees note that Appellants have abandoned the appeal on counts I and II. (ECF No. 31 at 6). Because Appellants do not dispute the bankruptcy court's order dismissing Counts I and II of Appellants' complaint in their brief, they have waived argument on these issues. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)) ("A party waives an argument by failing to present it in its opening brief or by failing to '"develop [its] argument"—even if [its] brief takes a passing shot at the issue.'").

Through Certificates, Series 2006-AR5 on Count III.  Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is unnecessary.  *See* Fed.R.Bankr.P. 8012; Local Rule 105.6.  For the following reasons, the order of the bankruptcy court will be affirmed.

I.  **Background**[2]

In or around April 2005, Mr. Rose acquired two adjacent lots: the first parcel ("Lot 19"), located at 6708 Oak Park Drive, Bethesda, MD 20817, is improved by a dwelling in which the Appellants reside; and the second parcel ("Lot 14"), located at 8605 Burning Tree Road, Bethesda, MD 20817, consists of vacant land with a paved driveway giving the Appellants their sole access to their dwelling on Lot 19 (collectively, the "Properties"). (ECF No. 14-50, at 4).[3]  Lot 14 was subject to an easement granting use of the driveway to Appellants as owners of Lots 14 and 19 as well as the Oleens, the owners of Lot 18, a neighboring parcel.  (*See id.* at 15; 14-52).  Appellants use Lot 14's address as their mailing address.  (ECF No. 14-50, at 4).  Lot 19 does not contain a driveway connecting the dwelling to Oak Park Drive.  (*Id.*).  Lot

---

[2] The facts are construed in the light most favorable to Appellants as the non-movants in the bankruptcy court.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

[3] Citations to Mr. Rose's deposition testimony will be to the document page number rather than the deposition page number.

2

14's driveway was fully constructed at the time Mr. Rose acquired the Properties. (*Id.* at 5). Lot 14's appearance has not changed since Mr. Rose acquired the Properties, and the driveway has not been moved. (*Id.* at 5, 14). Lot 14 does not have separate utilities. (*Id.* at 10).

Approximately one year after acquiring the Properties, Mr. Rose refinanced the loan secured by the Properties. On April 4, 2006, Mr. Rose executed the following: (1) a promissory note (the "Note") in favor of Appellees' predecessor in interest (the "Predecessor") in the amount of $1,710,000, (ECF No. 14-17); and (2) a deed of trust where he granted the Predecessor a lien on Lots 14 and 19 to secure repayment of the amounts due under the Note, (ECF No. 14-18).

On February 24, 2006, Mr. Rose executed a deed to transfer record title of the Properties from himself to Mrs. Rose and himself as tenants by the entirety (the "Deed"). (ECF No. 14-19, at 1-2). On April 24, 2006, the Deed and deed of trust were recorded in the land records for Montgomery County. (*Id.* at 4; ECF No. 1-16 ¶ 10).

Appellants attempted to sell Lots 14 and 19 as a unitary parcel beginning from 2016 or 2017. (*Id.* at 8). Shortly after Mr. Rose decided to sell Lots 14 and 19 separately, in 2021, Mr. Rose retained the law firm Knopf & Brown to prepare a memorandum advising on Lot 14's development potential (the "Brown

3

Memorandum"), (ECF No. 14-51).[4]  (ECF No. 14-50, at 11).  The Brown Memorandum stated that Lot 14 could be developed with a single-family home, but the driveway and easement would likely have to be moved with the Oleens' consent.  (ECF No. 14-51, at 2, 4).

On or about February 23, 2022, Appellants received a conditional offer to purchase Lot 14 (the "Conditional Offer"), which conditioned settlement on Appellants' removal of all easements.  (ECF No. 14-58, at 2).  On March 21, 2022, Appellants obtained an appraisal from Ono Appraisals valuing the Properties at $1.7 million.  (ECF No. 14-20).  On March 26, 2022, Appellants obtained an additional appraisal valuing the Properties at $2.15 million.  (ECF No. 14-60).  Both appraisals evaluated the Properties as a unitary parcel.  (*Id.;* ECF No. 14-20).

On March 3, 2022, Appellants commenced the instant case by filing a voluntary petition under Chapter 11 of the bankruptcy code.  (Bankr. Case No. 22-11083, ECF No. 1).  The filings described the Properties together as a "[s]ingle-family home" located at Lot 14's address with a value of $1.7 million and noted that separate valuations for Lots 14 and 19 would be forthcoming.  (Bankr. Case No. 22-11083, ECF No. 22, at 3).  The filings also

---

[4] Although Mr. Rose testified that he decided to sell Lot 14 separately in 2022, he later stated that he decided to sell Lot 14 shortly before Knopf & Brown prepared its memorandum on Lot 14's development potential in 2021.  (*See* ECF Nos. 14-50, at 10-11; 14-51).

4

identified Appellees as having a claim secured by the Properties in the amount of $1.7 million. (*Id.* at 12). On June 12, 2022, Appellants filed a complaint asserting three causes of action: Count I objects to, and seeks disallowance of, the Appellees' claim; Count II requests a declaratory judgment that the Appellees' deed of trust does not constitute a valid lien, secured claim, or encumbrance against the Properties; and Count III seeks alternative relief in the form of a declaratory judgment that the Appellees' lien on the Properties is stripped down to $1.7 million as of the petition date. (ECF No. 14-16). Appellees filed a motion to dismiss all three counts on August 12, 2022, (ECF Nos. 14-38; 14-39), and the bankruptcy court held a hearing on that motion on November 8, 2022, (ECF No. 14-46). On November 10, 2022, the bankruptcy court entered an order dismissing Counts I and II of Appellants' complaint and converting the motion to dismiss Count III to a motion for summary judgment. (ECF No. 14-45). On April 20, 2023, the parties conducted oral argument before the bankruptcy court. (ECF No. 16). On April 24, 2023, the bankruptcy court issued an oral ruling granting summary judgment on Count III in favor of Appellees. (ECF No. 15). On April 25, 2023, the bankruptcy court entered an order consistent with its oral ruling. (ECF No. 14-67).

On May 9, 2023, Appellants filed a notice of appeal to this court. (ECF No. 1). On September 11, 2023, Appellants filed their

5

brief. (ECF No. 30). On October 12, 2023, Appellees filed their opposition brief. (ECF No. 31). Appellants did not file a reply brief.

## II.  Standard of Review

The court has jurisdiction over this appeal because the bankruptcy court's order granting summary judgment to Appellees is a final order. 28 U.S.C. § 158(a)(1); *see also Gold v. Guberman (In re Computer Learning Ctrs., Inc.)*, 407 F.3d 656, 660 (4th Cir. 2005) (stating that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case") (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

> On appeal from the United States Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*. *In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). An appellate court reviews a "grant of a motion for summary judgment de novo" and applies the same standard as the originating court. *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment in favor of the Appellee is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A United States District Court may affirm, modify, or reverse a Bankruptcy Judge's order, or remand with instructions for further proceedings. *See Fed. R. Bankr. P.* 8013; *see also In re White*, 128 F. App'x. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622

6

> at *6, 2006 WL 3498411 at *2 (D.Md. Dec. 4, 2006).

*Feyijinmi v. Cent. Collection Unit*, 638 F.Supp.3d 535, 538-39 (D.Md. 2022).

## III. Analysis

In granting summary judgment in favor of Appellees with respect to Count III, the bankruptcy court held that, pursuant to 11 U.S.C. § 1123(b)(5), Appellees' lien on the Properties cannot be modified because Lots 14 and 19 constitute Appellants' principal residence. (ECF No. 15, at 4). The bankruptcy court concluded that Lot 14 is incidental property that is part of Appellants' principal residence on Lot 19 on the basis that "[Appellants] rely on [L]ot 14 for the use, enjoyment, support, existence, and enhancement of their residence on [L]ot 19, and treat [L]ot 14 as part of their principal residence." (*Id.* at 42). Appellants argue that the bankruptcy court should not have granted summary judgment because a genuine issue of material fact exists regarding whether Lot 14 is incidental property in relation to Appellants' principal residence. (ECF No. 30, at 8-9). Specifically, Appellants contend that Lot 14 is not incidental property because the Conditional Offer and the Brown Memorandum demonstrate that Lot 14 is a developable lot that could be marketed for sale, (ECF No. 30, at 9).

7

A Chapter 11 bankruptcy plan "may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5). The bankruptcy court held that a debtor's principal residence under Section 1123(b)(5) is determined as of the petition date. (ECF No. 15, at 19-21) (citing *In re Wong*, 598 B.R. 827, 832 (Bankr.D.Md. 2019) (holding that the temporal focus of the debtor's principal residence under 11 U.S.C. § 1123(b)(5) is on the petition date rather than when the parties created the relevant security interest); *In re Abdelgadir*, 455 B.R. 896, 903 (B.A.P. 9th Cir. 2011) (same); *In re Crump*, 529 B.R. 106, 110 (Bankr.D.S.C. 2015) (same); *In re Cohen*, 267 B.R. 39, 43 (Bankr.D.N.H. 2001) (same)). Because Appellants do not dispute the bankruptcy court's holding on this issue in their brief, they have waived argument on this issue. *See Grayson*, 856 F.3d at 316 (quoting *Nucor*, 785 F.3d at 923) ("A party waives an argument by failing to present it in its opening brief or by failing to '"develop [its] argument"—even if [its] brief takes a passing shot at the issue.'"). Given that Lot 14's appearance and driveway have not changed from the time Mr. Rose acquired the Properties in 2005, (ECF No. 14-50, at 5, 14), the court may look to Appellants' use, treatment, and purpose of Lot 14 up until the 2022 petition date to determine whether Lot 14 constitutes incidental property to Lot 19.

8

The definition of "principal residence" is "a residential structure if used as the principal residence of the debtor, *including incidental property*, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A) (emphasis added). "Incidental property" is defined as follows:

> The term "incidental property" means, with respect to a debtor's principal residence—
> (A) property commonly conveyed with a principal residence in the area where the real property is located;
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
> (C) all replacements or additions.

11 U.S.C. § 101(27B).

Courts have considered property to be part of a residence-including a principal residence-only if it is actually "linked to the support, existence, or enhancement of the structure in which the debtors live." *Lanier v. Beaman*, 394 B.R. 382, 384 (E.D.N.C. 2008); *see also, e.g.*, *In re Beckford*, 247 B.R. 27, 30 (Bankr.D.Conn. 2000) (holding that two adjacent lots have been used together as one residence when one lot contained the driveway and parking lot serving the other lot's house); *In re Frank*, No. 12-06722-8-SWH, 2014 WL 5395857, at *5 (Bankr.E.D.N.C. Oct. 23, 2014) (holding that two adjacent lots constitute a single residence when "the adjacent lot is seamlessly integrated into the debtor's use of his residence and acts as expanded back yard and recreation

9

area in connection with the residence."); *In re Marenaro*, 217 B.R. 358, 361 (B.A.P. 1st Cir. 1998) (holding that lots adjacent to the single-family house that were being used as a yard and parking area constituted incidental property to the principal residence). "[A]n abstract potential to use property in a different way," however, that "never amount[s] to a gleam in the eye of the owner at the time that the mortgage is given," cannot "withhold the protection of the anti-modification language from a mortgagee." *Marenaro*, 217 B.R. at 361. Otherwise, "virtually every mortgage would be subject to modification." *Id.*

Appellants solely rely on *Lanier*, 394 B.R. 382, and *In re Faulring*, 573 B.R. 71 (Bankr.W.D.N.Y. 2007)-deemed factually distinguishable by the bankruptcy court-in support of an alternative holding that the buildability of a lot is indeed dispositive to the determination of whether a property constitutes incidental property to a principal residence. (ECF No. 30, at 9-10). In *Lanier*, the debtors sought to show that their adjacent lots, separated by a fence-one containing the debtors' house and the other consisting of an undeveloped area used for horseriding by non-family members-constituted a single residence for the purpose of obtaining a federal bankruptcy homestead exemption under 11 U.S.C. § 522(d)(1). *Lanier*, 394 B.R. at 383. Informed by the definitions of "principal residence" and "incidental property" under 11 U.S.C. § 101(13A) and 11 U.S.C. § 101(27B), the

10

*Lanier* court held that the horseriding area was not incidental property commonly conveyed with the debtors' principal residence-namely, the lot containing the debtors' house. *Id.* at 383-84. Appellants provide the following excerpt of the *Lanier* court's reasoning:

> There is no confusion by any reasonable viewer, as it is clear that the two properties are not commingled as part of one residence, but that one area is the debtors' home and one area is the horse area that is owned by the debtors.
>
> The debtors refer to several cases in bankruptcy courts outside of this circuit where two adjacent lots were considered to be part of the debtor's residence. In those cases, the debtors used the adjacent lots for their own family needs, and had either built structures for family purposes, parked their cars there, had sheds for storing family property, or in other ways subsumed the property so its use was completely indistinguishable from the home. These facts are not present here.

Indeed, as Appellants assert, *Lanier* "supports the proposition that one lot is not incidental property simply because it is adjacent to another lot." (ECF No. 30, at 10). As shown, however, in the excerpt of *Lanier* provided by Appellants, the *Lanier* court did not hold that the horseriding area is not incidental property because it is commercially developable. Rather, the dispositive fact was that the horseriding area fulfilled a purpose entirely separate from day-to-day household activities, as manifested in the lots' visual separation.

11

Appellants' reliance on *Faulring*, a similar case to *Lanier*, fares no better. In *Faulring*, a debtor sought a determination that his three contiguous lots constituted a single residence for the purpose of obtaining a federal bankruptcy homestead exemption under 11 U.S.C. § 522(d)(1). *Faulring*, 573 B.R. at 72-73. The first lot contained the debtor's house, a rental unit, and a pole barn for vehicle storage. *Id.* at 73. The second lot was acquired by the prior owner as a buffer during the pole barn's construction, and the third lot consisted of an undeveloped wooded area where the debtor would occasionally hunt and collect firewood. *Id.* The *Faulring* court determined that, unlike the pole barn, neither the wooded area nor the standalone rental unit were incidental property typically conveyed with residences in the area because "the debtor does not use the rental unit and undeveloped acreage as his residence." *Id.* at 74. Appellants argue that *Faulring* stands for the proposition that "'incidental property' excluded raw land on a separate parcel." (ECF No. 30, at 9). In support, Appellants provide an excerpt of the *Faulring* court's application of *Lanier*'s holding, which states in part, "the sporadic use of undeveloped land will not transform it into property incidental to the debtor's residence." *Faulring*, 573 B.R. at 74.[5] Appellants, however,

---

[5] The remainder of Appellants' selected excerpts of *Faulring* misrepresent the language in the opinion. *Compare* (ECF No. 30, at 9), *with Faulring*, 573 B.R. at 73-74.

12

misread *Faulring* and overlook the fact that *Faulring*'s holding is not predicated on the wooded area's undeveloped state. Rather, the *Faulring* court's determination that the rental unit-a commercial development-also does not qualify as incidental property demonstrates that the wooded area's *non-residential purpose*, not its lack of development, is dispositive.

Accordingly, under *Lanier* and *Faulring*, the bankruptcy court did not err in "focus[ing] on [Appellants'] use, treatment, and purpose of [L]ot 14 [to] determin[e] whether it should be considered part of [Appellants'] principal residence." (ECF No. 15, at 34-35). As the bankruptcy court stated, Lot 14 is dissimilar to the horseriding area in *Lanier* because the Brown Memorandum shows that "[t]o the average person viewing the property, [L]ots 14 and 19 appear to be one single unitary parcel of land[]" such that the two properties are commingled as a single residence. (ECF No. 15, at 29-30) (citing ECF No. 14-51, at 10-11). Moreover, unlike the sporadically used wooded area in *Faulring*, Lot 14 "is treated, for all intents and purposes, as part of [L]ot 19" given that it is "the sole form of access to . . . [L]ot 19 [and its residential structure]." (ECF No. 15, at 28). The fact that Lot 14 lacks separate utilities and serves as Appellants' mailing address further evidences that Lot 14 functions as an extension of Appellants' residence on Lot 19. (ECF No. 14-50, at 4, 10). Appellants have not indicated that Lot 14

13

has been used for a non-residential purpose.  As such, Appellants have not shown that the Lot 14's commercial development potential amounts even to "a gleam in the eye[.]"  *Marenaro*, 217 B.R. at 361.

Appellants argue that "[a] commercially developable lot cannot be considered property commonly conveyed with a principal residence in the area where Lot 19 is located" because "[i]t is neither common nor frequent that a residential homeowner purchases two lots from a developer, one of which can be developed for the homeowners' separate sale."  (ECF No. 30, at 10).  The frequency that a homeowner purchases two lots, one of which can be developed for separate sale, is irrelevant to determining whether Lot 14 constitutes property commonly conveyed with a principal residence in the area where Lot 19 is located.  Here, Appellants do not dispute that Lot 14 contains nothing but the sole pathway to their house on Lot 19.  Hence, the bankruptcy court correctly stated that Lot 14 would be commonly conveyed with Lot 19 because "the debtors had no other means of driving onto their property unless they drove over their grassy lawn."  (ECF No. 15, at 33).  The Brown Memorandum and the Conditional Offer also suggest that Lots 14 and 19 would be commonly conveyed together given that they are inextricably linked by the driveway.  The Brown Memorandum recognizes that "[t]he feasibility of [Lot 14's] development plan is contingent upon . . . moving the driveway" currently benefitting

14

Lot 19, because its location "interfere[s] with [the] development of Lot 14." (ECF No. 14-51, at 4-5). The Conditional Offer conditions settlement on Appellants' removal of all easements, including the driveway easement linking Lot 14 to Lot 19. (ECF No. 14-58, at 2). More importantly, Lots 14 and 19 were in fact conveyed together when they were purchased by Appellants. (ECF No. 14-50, at 5). Appellants have appraised and attempted to sell Lots 14 and 19 as a unitary parcel, in addition to describing Lots 14 and 19 together in their filings as a "[s]ingle-family home" located at Lot 14's address. (ECF Nos. 14-20; 14-60; 14-50, at 8; Bankr. Case No. 22-11083, ECF No. 22, at 3). Appellants' treatment of the Properties plainly indicate that Lot 14 constitutes property commonly conveyed with a principal residence in the area where Lot 19 is located.

**IV. Conclusion**

The order of the bankruptcy court granting summary judgment will be affirmed. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
